FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2004 MAR -3 AM 10:59
LORETTA G. WHYTE
CLERK

1339-10430

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **SHADOWTRACK TECHNOLOGIES, INC.** | * | 04-0612 |
| **Plaintiff** | * | **CIVIL ACTION NO.** |
| **VERSUS** | * | SECT. I MAG. 5 |
| **SAEID SAJJAD,** | * | **SECTION** |
| **DEERECO HOLDING, LLC,** | | |
| **LUMENEX, INC., and** | * | |
| **SOFT TECHNOLOGY, INC.** | | |
| | * | |
| **Defendants** | | |
| | * | |

**COMPLAINT FOR DAMAGES**

Plaintiff, ShadowTrack Technologies, Inc. (hereinafter "ShadowTrack") brings this diversity action for breach of contract and breach of fiduciary duty. Plaintiff and defendants, Saeid Sajjad, Deereco Holding, LLC, Lumenex, Inc., and Soft Technology, Inc. (hereinafter collectively, the "Sajjad Companies") entered into a contract pursuant to which ShadowTrack paid the Sajjad Companies $100,000 to develop software to ShadowTrack's specifications. Although the Sajjad Companies agreed not to develop or

✓ Fee $150.00
✓ Process
X Dktd
CtRmDep
Doc. No.

market competing software, ShadowTrack has learned that the Sajjad Companies in fact have developed and are marketing competing software. In doing so, the Sajjad Companies have breached the contract and breached a fiduciary duty by usurping ShadowTrack's corporate opportunities. ShadowTrack also seeks to enjoin the Sajjad Companies from developing and marketing the competing software because this conduct will cause ShadowTrack immediate and irreparable competitive harm.

**Parties**

1. Plaintiff, ShadowTrack Technologies, Inc., is a corporation organized under the laws of the State of Louisiana with a principle place of business in Covington, Louisiana.

2. Defendant, Saeid Sajjad, is a citizen and domiciliary of the State of Maryland. Defendant, Saeid Sajjad, is the sole member of defendant, Deereco Holding, LLC, and is Vice President of defendant, Lumenex, Inc. It is further believed that he owns and controls defendant, Soft Technology, Inc., and has been clothed with the apparent authority to act in their behalf.

3. Defendant, Deereco Holding, LLC, is a limited liability company organized under the laws of the State of Maryland with a principle place of business in Timonium, Maryland.

4. Defendant, Lumenex, Inc., is a corporation organized under the laws of the State of Maryland with a principle place of business in Timonium, Maryland.

5. Defendant, Soft Technology, Inc., is a corporation organized under the laws of the state of Maryland with a principle place of business in Timonium, Maryland.

## Jurisdiction and Venue

6. The citizenship of the parties is diverse because plaintiff, ShadowTrack, is a resident and citizen of the State of Louisiana, and each defendant is a resident and citizen of the State of Maryland. The amount in controversy exceeds $75,000.00. This Court, therefore, has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

7. This Court has personal jurisdiction over the defendants pursuant to LSA-R.S. §§3201(A)(2) and 3201(B) because they contracted to and did supply services in the State of Louisiana. This dispute arises out of that conduct.

8. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(a)(2), because ShadowTrack is located in this District, and defendants agreed to and did supply services in this District pursuant to the contract.

## Background

### A. The Original Software Application

9. ShadowTrack is a business that offers services to courts, sheriffs, departments of corrections, and other similar entities to monitor people in home confinement programs. ShadowTrack offers these services to monitor the whereabouts of individuals. ShadowTrack conceived of this innovative business concept and hired the Sajjad Companies to develop software to place into effect the innovative business concept.

10. ShadowTrack's business monitors an individuals whereabouts by using telephony and voice biometric technology. The individual registers with the program by providing a sample of his or her voice, which is turned into a digital file. ShadowTrack then randomly generates telephone calls to the individual at his or her home (or other court-approved location) and he/she must respond to a series of questions. ShadowTrack then matches both the content of the answers and the unique voiceprint to the individual's registration samples in order to confirm that the individual is at the court-approved location. The ShadowTrack service also requires an individual to place calls to a monitoring telephone number, where the person's voiceprint and location are matched with the registration data to confirm that the individual is in a court-approved location. Thus, ShadowTrack has developed a highly innovative and cost-efficient computerized mechanism to use telephones to monitor compliance with home confinement orders.

11. ShadowTrack and defendant, Sajjad, acting for defendants, Lumenex, Soft Technology, and Deereco Holding, entered into a confidential, fiduciary relationship regarding the ShadowTrack home confinement monitoring system. ShadowTrack shared its innovative monitoring concept with the Sajjad Companies and entrusted them with proprietary, private business plans, secrets, and concepts relating to the ShadowTrack application software with the understanding that they would use the information to develop the software to implement ShadowTrack's concept. That agreement remains in full force and effect as its duration of three years begins anew with each confidential disclosure.

12. On or about June 29, 2001, ShadowTrack and, defendant Lumenex, Inc., entered into a contract in which Lumenex agreed to develop software according to ShadowTrack's specifications and including features delineated by ShadowTrack necessary to implement ShadowTrack's home confinement monitoring service. ShadowTrack paid its initial deposit for the software. On or about July 4, 2001, ShadowTrack paid the balance due under this agreement.

13. On or about August 29, 2001, ShadowTrack and defendant, Lumenex, entered into a Development Plan Modification Agreement where ShadowTrack identified additional necessary features for the software, and Lumenex charged an additional fee for those features. On or about August 30, 2001, ShadowTrack paid Lumenex $13,700.00 for the agreed modifications.

14. On or about September 23, 2001, ShadowTrack and Lumenex entered into a server hosting and co-location agreement. For a fee, Lumenex agreed to host and maintain the servers owned by ShadowTrack and necessary to run the ShadowTrack application software and to perform data backup services.

15. On or about October 2, 2001, Robert Magaletta, president of ShadowTrack, acknowledged receipt of the original application software.

16. On or about October 9, 2001, ShadowTrack enrolled the first offender on its application software for monitoring service in Louisiana.

**B. The New Software Application**

17. During November and December 2001, ShadowTrack, through its usage of the

application software, discovered that the original application software had numerous software issues and did not perform to expectations while monitoring "live" accounts. Through the use of the application software several improvements that would be necessary to improve performance and enhance the capabilities of the application software were discovered. ShadowTrack and defendant, Saeid Sajjad, began discussions for development of a new generation of software (hereinafter the "New Application Software") so that it would work properly as expected and to improve and enhance the original application software.

18. On or about March 13, 2002, ShadowTrack and Sajjad signed a Memorandum of Understanding ("MOU"), attached hereto as Exhibit A, delineating their intentions and agreement relating to developing the New Application Software for the ShadowTrack service. Although the MOU stated that it was not a final development and licensing agreement, the MOU says it reflects the intentions of the parties through specific Terms of Understanding between ShadowTrack, Sajjad, and the Sajjad Companies.

19. The MOU recited that Soft Technology, Inc. is owned and controlled by Sajjad and had developed the ShadowTrack software product under the June 29, 2001 agreement between plaintiff and Lumenex. The MOU identified the intentions of the parties to develop the New Application Software. This time, Deereco Holdings was to develop the software.

20. Under the MOU, ShadowTrack agreed to pay Deereco $100,000.00 for developing the New Application Software, which accommodated the changes from the original software as described in an attached scope of work. At defendants' insistence,

ShadowTrack paid $100,000 to the Sajjad Companies on or about March 13, 2002.

21. Under the MOU, ShadowTrack agreed to allow Deereco to appoint a director to ShadowTrack's Board of Directors and to give defendants a 14% equity interest in plaintiff.

22. Paragraph 3(2) of the MOU states that Sajjad and the Sajjad Companies agreed:

> [T]hat they will not develop, license, sell, or provide software similar to or competitive with the New Application Software for any persons or organizations, except to the limited extent permitted below.
>
> > (a) The Sajjad Companies may develop, license, sell, or provide software similar to or competitive with the New Application Software to federal, state, local, and foreign governmental agencies, for their own use within their own jurisdictional boundaries. Such governmental agencies shall not be granted the right to sell or resell such software, or to produce copies of such software for sale or licensing to others.
> >
> > (b) The Sajjad Companies may develop, license, sell, or provide software similar to or competitive with the New Application Software to the private companies identified on Exhibit A attached hereto. Each of the companies identified on Exhibit A (the "Listed Companies") is presently, or will become imminently, the holder of a contractual right to require the Sajjad Companies to develop, license, sell or provide such software. The Listed Companies will not be restricted in their use of any software developed, licensed, sold or provided by the Sajjad Companies.
> >
> > (c) Before any Sajjad Company develops, licenses, sells or provides any software similar to or competitive with the New Application Software under paragraphs (a) or (b) above, Deereco shall notify ShadowTrack of such pending transaction.

23. The Listed Companies are: Toshiba America Information Systems; Toshiba America Information Systems Authorized Dealers; Tadiran and Tadiran Authorized Dealers; Sprint (Sprint Products Group) and Sprint Authorized Dealers; KEI Pearson (all offices); and Norstan (all offices).

24. The MOU also states that the parties intended that the New Application Software would be housed on servers located at AT&T in Ashburn, Virginia, or another commercial hosting location. Indeed, on or about March 6, 2002, ShadowTrack, Sajjad, and AT&T held a conference call to discuss a hosting agreement where the servers running the New Application Software would be housed at AT&T.

25. On or about April 24, 2002, ShadowTrack and AT&T signed a server hosting agreement, with the intentions of moving the ShadowTrack equipment to the AT&T data center for housing. On or about September 6, 2002, Robert Magaletta and Saeid Sajjad agreed to a schedule the move of the ShadowTrack equipment on November 6, 2002. On or about October 1, 2002, Saeid Sajjad disallowed the move of the ShaodwTrack equipment. Saeid Sajjad would not allow the release of the ShadowTrack equipment without a signed agreement that would eliminate the MOU.

**C. <u>The Defendants Breached the Agreement</u>**

26. On or about March 13, 2002, ShadowTrack mailed Deereco a check for $100,000.00, as required by the MOU.

27. On or about May 28, 2002, Deereco deployed the New Application Software. The New Application Software, however, does not comply with the entire scope of work outlining the necessary features for the software, and has not been expanded as requested by ShadowTrack to include certain new applications.

28. Subsequent to the execution of the MOU, plaintiff continually provided confidential information gained only by the use of the application software to Saeid Sajjad and his companies, and was assured that the New Application Software would be further modified to accommodate a GPS/cell phone application disclosed in confidence to Saeid Sajjad. The MOU having been executed on March 8, 2002 and the disclosure having occurred thereafter, the efficacy of the Confidentiality Agreement began on or after March 27, 2001, and remains in effect for three (3) years from that date. A copy of the Confidentiality Agreement is attached hereto and marked as Exhibit B.

29. The Sajjad Companies have failed to comply with Paragraph 3 of the MOU in three material respects. First, and without the required disclosure to plaintiff, they negotiated to license, sell or provide ShadowTrack software to Unisys without ShadowTrack's approval. Second, they have developed and are marketing a competing software application called Phantom Tracker, and third, upon information and belief, Saeid Sajjad or others acting in his behalf, has developed the software for GPS/cell phone tracking, but is not providing it to plaintiff, as required by the MOU and verbal agreement. Instead, Sajjad, his companies or others acting in his behalf, are independently marketing

this and similar software under the trade or corporate name, XBiometrics in direct competition with ShadowTrack and contrary to the provisions of the MOU.

30. Beginning on or about April 24, 2002, and continuing through the spring and summer of 2002, Sajjad, on behalf of the other defendants, negotiated with Unisys to develop, license, sell, or provide the ShadowTrack software or software similar to the ShadowTrack New Application Software for use in the State of New York's probation and corrections department. Unisys is not one of the approved Listed Companies on Exhibit A to the MOU, which is attached to that document. Unisys would use the ShadowTrack concepts to equip and market a competing monitoring service for state and federal agencies, directly competing with ShadowTrack. Unisys would also use the ShadowTrack concepts to use voice identification software in other industries, using ShadowTrack's corporate opportunities. ShadowTrack has not authorized Sajjad to engage in those negotiations. Therefore, Sajjad breached the agreement, which he and his companies entered with plaintiff, memorialized in paragraph 3(b) of the MOU, when he marketed the software to Unisys.

31. On information and belief, Sajjad has continued to negotiate with Unisys and may be close to finalizing a deal between Lumenex and Unisys whereby Unisys would have access to the ShadowTrack application software or competing software for operating its own monitoring business.

32. Also in violation of Section 3 of the MOU, the Sajjad Companies developed a competing software application called Phantom Tracker in the spring of 2002. On

information and belief, Phantom Tracker uses the concept developed by ShadowTrack to monitor individuals with computers calling persons at approved locations and confirming their identity with voice print identification technology. On information and belief, Phantom Tracker incorporates the features and a modification ShadowTrack identified as necessary for ShadowTrack, and even uses software from ShadowTrack that was developed at ShadowTrack's expense. On information and belief, the Sajjad Companies have marketed Phantom Tracker, using materials developed at ShadowTrack's expense and with invaluable feedback and direction provided with consistent use of the application software. Thus, the Sajjad Companies are using ShadowTrack's concept and software developed at ShadowTrack's expense to compete with ShadowTrack.

33. ShadowTrack learned that the Sajjad Companies were developing a product called Phantom Tracker. During a visit to the Lumenex offices to view the housing of the ShadowTrack server, John Ferrara, Executive Vice President, saw a disc resting in a stack on the ShadowTrack shelving with the handwritten word Phantom Track. When Robert Magaletta, president of ShadowTrack, asked Sajjad about that product in the presence of John Ferrara, the executive vice president of ShadowTrack, Sajjad stated that Phantom Tracker was just a code name used within the office for fixes to identified software issues that would be made to the ShadowTrack New Application Software.

34. Later, Sajjad retreated from the position that Phantom Tracker was just a code name. He later stated that Phantom Tracker was a name used in his office for

upgrades and features for implementation in the family of products owned by the Sajjad Companies.

35. ShadowTrack then learned that Phantom Tracker instead was an entire software package consistent to the New Application Software and enhanced with the features that were discussed in confidentiality between Robert Magaletta and Saeid Sajjad that, upon information and belief, the Sajjad Companies developed using ShadowTrack Concepts to compete with ShadowTrack.

36. ShadowTrack informed Sajjad that the ShadowTrack New Application software requires certain updates to conform to the scope of work. Sajjad has refused to implement those updates, but, on information and belief, Sajjad has incorporated the new concepts and updates developed by ShadowTrack into its competing Phantom Tracker and/or XBiometrics software.

37. In concert with other persons and organizations, Sajjad and Lumenex have marketed the Phantom Tracker and/or Xbiometrics software as a competitor to ShadowTrack. Sajjad has created press releases advocating Phantom Tracker and/or XBiometrics. During the production of the New Application Software, ShadowTrack's president, Robert Magaletta, advised Saeid Sajjad that soon there would be existing technology, together with his innovations which could be employed to use a GPS together with a cellular phone so that the voice of the party answering the cell phone could be considered along with the content of his answers and also his location, which would be a sensational expansion of the innovation developed by ShadowTrack. He requested that he

undertake to develop the necessary software or software changes to implement this new change to the package. The Sajjad Companies, upon information and belief, have in fact developed the software needed to perform this function, but instead of providing it to ShadowTrack, it is being used to promote similar software under the trade name or corporate name XBiometrics, in direct competition with ShadowTrack and in violation of the terms of the MOU. This knowledge only came to ShadowTrack's attention on or about February 14, 2004.

38. ShadowTrack paid Saeid Sajjad to develop a White Paper Report. The XBiometrics website contains wording exact and similar to the White Paper Report paid for by ShadowTrack for product marketing of the ShadowTrack application software.

38. On or about September 23, 2002, Sajjad repudiated the MOU in an attachment to an email he sent to ShadowTrack. In that correspondence, Sajjad stated that he wants his companies to be able to compete with ShadowTrack, contrary to the express terms of the MOU.

## COUNT I

## Breach of Contract (MOU)

39. ShadowTrack re-alleges Paragraphs 1 through 38 of the Complaint as if fully set forth herein.

40. ShadowTrack and Sajjad, who was acting as the agent for Lumenex, Deereco Holding, and Soft Technology, entered into an agreement, memorialized in the

March 13, 2002 MOU, whereby defendants would not develop, license, sell, or provide any software similar to or competitive with the ShadowTrack New Application Software. The parties intended to be bound and exchanged mutual consideration for this promise.

41. The Sajjad Companies, however, have developed Phantom Tracker and/or XBiometrics, which are similar software that competes with the ShadowTrack New Application Software, and has begun marketing that software.

42. Sajjad has negotiated to sell the competing software to Unisys in violation of the express terms of the MOU.

43. This conduct materially breaches an essential term of the agreement between the parties and has damaged ShadowTrack.

**COUNT II**

**Unjust Enrichment (La. Civ. Code art. 2298)**

48. ShadowTrack repeats and re-alleges paragraphs 1 through 38 of the Complaint as though fully set forth herein.

49. By developing and marketing competing software and by marketing the ShadowTrack New Application Software without authorization, the Sajjad Companies have enriched themselves at plaintiff's expense. The Sajjad Companies have used ShadowTrack's concepts and software that ShadowTrack paid for, enriching themselves and causing a corresponding impoverishment for ShadowTrack.

50. The Sajjad Companies lacked any justification or cause for developing and marketing the competing software and marketing the ShadowTrack New Application Software.

**COUNT III**

**Breach of Fiduciary Duty**

51. ShadowTrack repeats and re-alleges paragraphs 1 through 38 of this Complaint as though fully set forth herein.

52. The Sajjad Companies owe ShadowTrack a fiduciary duty because ShadowTrack entrusted them with secret, proprietary business information, plans, and ideas regarding the ShadowTrack application software so that the Sajjad Companies could develop software to implement ShadowTrack's concepts. In addition, pursuant to a contractual provision in the MOU, ShadowTrack agreed to grant Deereco a seat on its Board of Directors and agreed to grant Deereco shares of ShadowTrack stock.

53. The Sajjad Companies breached the MOU with ShadowTrack regarding their development of a competing software application and regarding the marketing of ShadowTrack application software to other disallowed entities and without notification to ShadowTrack as is outlined in the MOU.

54. When the Sajjad Companies developed the Phantom Tracker software application and marketed ShadowTrack's application software to Unisys without authorization, they breached the trust ShadowTrack had placed in them. By developing

Phantom Tracker and engaging in unauthorized negotiations with Unisys, the Sajjad Companies used ShadowTrack's secret, proprietary information for their own personal gain to ShadowTrack's detriment. They used ShadowTrack's concept and software that ShadowTrack paid for.

55. The Sajjad Companies breached their fiduciary duty to ShadowTrack by usurping a corporate opportunity of ShadowTrack.

56. ShadowTrack is entitled to all profits the Sajjad Companies earn as a result of breaching this fiduciary duty and usurping this corporate opportunity. All such profits should be placed in a constructive trust for the benefit of ShadowTrack.

**Jury Demand**

Plaintiff hereby requests that the claims be tried to a jury.

**Prayer For Relief**

WHEREFORE, plaintiff requests that the Court:

A. Order specific performance of the MOU and server hosting agreement;

B. Permanently enjoin the Sajjad Companies from developing and marketing competing software in breach of the contract;

C. Enter judgment for ShadowTrack and award damages to ShadowTrack;

D. Create a constructive trust for ShadowTrack's benefit of any proceeds the Sajjad Companies have received from developing and marketing competing software;

E. Award ShadowTrack the costs of this action;

F. Grant such other or additional relief as is just and proper; and

G. For trial by jury on all issues.

Respectfully submitted,

**STEPHEN A. MOGABGAB (#9528)**
**ROGER D. MARLOW (#20282)**
**LAURIE M. PENNISON (#27275)**
**HULSE & WANEK**
**512 E. BOSTON STREET**
**COVINGTON LA 70433**
**Telephone: (985) 892-5953**
**Facsimile: (985) 893-2932**

**PLEASE SERVE:**

1. DEERECO HOLDING, LLC,
*through its agent for service of process:*
Jesse D. Delanoy
Suite 200
8 Park Center Court
Owings Mills, MD 21117

2. XBIOMETRICS, INC.,
*through its agent for service of process:*
Kim Mink
201 W. Padonia Road
Timonium, MD 21093-2112

3. SOFT TECHNOLOGY, INC.,
*through its agent for service of process:*
Saeid Sajjad
201 W. Padonia Road
Timonium, MD 21093-2112

4. SAEID SAJJAD,
*Individually at:*
201 W. Padonia Road
Timonium, MD 21093-2112

5. LUMENEX, INC.,
*through its agent for service of process:*
Masoud Sajjad
201 W. Padonia Road
Timonium, MD 21093-2112

**VERIFICATION**

STATE OF LOUISIANA

PARISH OF ST. TAMMANY

BEFORE ME, the undersigned authority, personally came and appeared:

ROBERT MAGALETTA

who after being duly sworn, did depose and say that the facts in the above and foregoing Complaint for Damages are true and correct to the best of his knowledge, information and belief.

ROBERT MAGALETTA

SWORN TO AND SUBSCRIBED before me this 2nd day of March, 2004.

NOTARY PUBLIC

Z \sam\10430\Complaint&for.injunctive.relief.Rev.3.1 04 wpd

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED